UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ULTRA MANUFACTURING (U.S.A.)
INC. d/b/a MITCHELL PLASTICS, and
ULTRA MANUFACTURING S.A.
DE C.V.,

      Plaintiffs,

                              Case No. 24-10025

v.

                              Hon. George Caram Steeh

ER WAGNER MANUFACTURING
COMPANY,

      Defendant.
_____/

OPINION AND ORDER DENYING PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 6)

Before the court is Plaintiffs' motion for preliminary injunction. The

court heard oral argument on January 25, 2024, and took the matter under

advisement. For the reasons explained below, Plaintiffs' motion is denied.

BACKGROUND FACTS

This is a dispute between automotive suppliers. Defendant, ER

Wagner Manufacturing Company ("ER Wagner"), supplies parts to Plaintiffs

(collectively "Mitchell Plastics"), which they use to make center consoles

and armrest assemblies for customers such as Stellantis. ER Wagner has

been the sole supplier of these parts since 2017, pursuant to two purchase

orders. The purchase orders incorporate Mitchell Plastics' terms and conditions.

The terms and conditions provide that "some portion or all of [Mitchell's] requirements will be obtained from [ER Wagner]. This is a requirements contract." ECF No. 1-2 at PageID 26. The duration of the contract "shall be for the life of the program(s) into which the Supplies are ultimately incorporated." *Id.* The terms and conditions further provide that prices "are not subject to increase" unless otherwise agreed. *Id.* at PageID 30. According to ER Wagner, it has not received a price increase, other than to reflect the fluctuating price of steel. It has supplied parts to Mitchell Plastics at an average of 340,000 per year since 2018.

Plaintiffs allege that on November 1, 2023, ER Wagner informed them that it would unilaterally instituting a price increase for the parts, effective February 1, 2024. ER Wagner also demanded $374,070, in order to update the tooling used to manufacture the parts.

For its part, ER Wagner alleges that Mitchell Plastics asked it to quote an "extension and uplift" of the parts program in April 2023. The program – for the Dodge Ram – was anticipated to run longer and for higher volume. Mitchell Plastics requested a quote for a new annual volume of approximately 600,000 parts, to take effect in January or July of

2

2024. *See* ECF No. 6-2 at PageID 263-64. ER Wagner responded with a request for a price increase to $12.07 per part and $374,070 for "tooling refurbishment . . . to support increased volume." *Id.* at PageID 258-59.

Mitchell Plastics responded that it expected ER Wagner to continue to honor the parties' contract, including the pricing, for as long as Mitchell Plastics requires the parts for the Stellantis program. *Id.* at PageID 266. In a December 13, 2023 letter, ER Wagner replied that it "intends to exit this business without the requested economic relief." ECF No. 6-2 at PageID 268. "For clarity, ER Wagner will accept revised POs with the increased prices effective January 1, 2024. If Mitchell sends ER Wagner production releases purporting to be effective after that date without increasing the prices, this letter will also act as ER Wagner's prospective rejection of those releases." *Id.*

On December 20, 2023, Mitchell Plastics again rejected ER Wagner's request for a price increase, stating that it "cannot unilaterally require [a] price increase not provided for in the contract." *Id.* at PageID 271.  "Mitchell does not have an alternative source of supply for the parts and, if Supplier does not deliver the parts, Mitchell will suffer irreparable harm, including potentially a shutdown of its and its customer's production." *Id.*

Although the parties are at an impasse with respect to the requested price increase, ER Wagner states that it has not stopped delivering parts to Mitchell Plastics, "but it has not changed its legal position, either." ECF No. 9 at PageID 304. Because ER Wagner has refused to offer assurance that it will continue supplying at the contract price, Mitchell Plastics seeks injunctive relief.

<u>LAW AND ANALYSIS</u>

Injunctive relief is "an extraordinary remedy." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see* Fed. R. Civ. P. 65. The court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (citation omitted). These are "factors to be balanced, not prerequisites that must be met." *Id.; see also Winter*, 555 U.S. at 20. "Although the factors are to be balanced, a finding that there is no likelihood of irreparable harm or no likelihood of success on the merits is usually fatal." *CLT Logistics v.*

4

*River W. Brands*, 777 F. Supp.2d 1052, 1064 (E.D. Mich. 2011) (citing

*Gonzales v. Nat'l Bd. of Med. Exam'rs,* 225 F.3d 620, 625 (6th Cir. 2000)).

Regarding the merits, the dispositive issue is whether the parties'

agreement is a requirements contract, binding ER Wagner to continue

supplying parts to Plaintiffs for the life of the program, or whether it is a

"release-by-release" contract, allowing it to stop selling those parts once it

satisfies the final accepted release. The Michigan Supreme Court recently

explained the distinction between these contract types in *MSSC, Inc. v.*

*Airboss Flexible Prods. Co.*, 511 Mich. 176 (2023).

As background, the *Airboss* court noted that under the Uniform

Commercial Code's statute-of-frauds provision, an agreement for the sale

of goods must contain a quantity term to be enforceable. *Id.* at 181

("[Q]uantity is the only *essential* term required by the statute of frauds."). A

quantity term may be defined by the "output of the seller or the

requirements of the buyer." *Id.* at 182 (quoting M.C.L. § 440.2306(1)).

Requirements contracts are often created by an umbrella agreement, or

"blanket purchase order," which governs terms such as pricing, warranty,

indemnification, termination, and the like. *Id.* at 183. "Most importantly, in a

requirements contract, the terms of the blanket purchase order also dictate

that the buyer will obtain a set share of its total need from the seller (such

as 'all requirements of the buyer'). This phrase satisfies the quantity term required by the statute of frauds. MCL 440.2306(1). To supplement this general term, the buyer will typically later issue 'releases' to let the seller know its specific short-term requirements." *Id.* A requirements contract need not be exclusive. "A seller can agree to provide a nonexclusive part of the buyer's total need." *Id.* at 194.

Similar to requirements contracts, "release-by-release" contracts are also governed by a blanket purchase order setting the overall contract terms, and the buyer also issues releases setting forth specific quantities. However, "unlike a requirements contract," the blanket purchase order in a release-by-release contract "does not set forth the share of the buyer's need to be purchased from the supplier." *Id.* at 183-84. In other words, the buyer purchases goods in accordance with the quantities set forth in its releases, rather than committing to purchase its requirements. "[R]elease-by-release contracts [are] structured so that their overarching terms are 'only enforceable once a firm quantity is stated,' which 'happens only when a release is issued' and accepted." *Id.* (citation omitted).

> The key difference between a requirements contract and a release-by-release contract rests in the level of mutual obligation between the parties and the risk each party bears. A requirements contract assures the seller that the buyer will be a customer for the length of the contract, but the seller cannot reject future orders for the length of the

6

contract. In contrast, a release-by-release contract "gives both parties the freedom to allow their contractual obligations to expire in short order by either not issuing or not accepting a new release." . . .The seller cannot be guaranteed future business from the buyer, but the seller can accept or reject any offer for future orders.

*Airboss*, 511 Mich. at 185 (citations omitted).

Plaintiffs argue that their purchase orders, which incorporate their terms and conditions, created a binding requirements contract. According to the terms and conditions,

The quantity applicable to each Purchase Order, and the duration applicable to each Purchase Order, may be specified on the face of the Purchase Order. Unless the Purchase Order specifically provides that Seller shall produce one hundred percent (100%) of Purchaser's requirements for the Supplies, Purchaser shall have the right to purchase a portion of such Supplies from another third party source or from Purchaser's internal sources. Notwithstanding, *some portion or all of Purchaser's requirements will be obtained from Seller. This is a requirements agreement.* Seller further acknowledges and agrees that Seller is obligated to provide supplies to Purchaser in the quantity specified in any firm release issued by Purchaser ("Release"). A Release will specify a firm quantity of Supplies and/or a firm quantity of raw materials/components that Purchaser will be responsible for in the event of termination. Releases may include Projections (defined below), but Releases are only binding upon Purchaser for, and Purchaser shall have no obligation or liability beyond, the firm quantity specified in the Release. . . . Unless stated otherwise on the face of the Purchase Order, the duration of each Purchase Order shall be for the life of the program(s) into which the Supplies are ultimately incorporated, including any extensions or

7

renewals thereof, plus applicable service and replacement
parts requirements.

ECF No. 1-2 at PageID 26 (emphasis added).

The blanket purchase orders issued by Mitchell Plastics contain an "estimated annual quantity" term of "0" and do not state that ER Wagner shall produce 100% of Mitchell's requirements. ECF No. 1-2 at PageID 46-50. Because a quantity term is not stated on the purchase orders, the terms and conditions govern and provide that "*some portion or all of [Mitchell]'s requirements will be obtained from [ER Wagner]. This is a requirements agreement.*" ECF No. 1-2 at PageID 26 (emphasis added).

However, "some portion or all of Purchaser's requirements" is not a sufficient quantity term to satisfy the statute of frauds. "[I]n a requirements contract, the terms of the blanket purchase order also dictate that the buyer will obtain *a set share of its total need from the seller (such as 'all requirements of the buyer')*." *Airboss,* 511 Mich. at 183 (emphasis added). Here, Mitchell agreed to purchase "some portion or all" of its requirements from ER Wagner, not a "set share of its total need." *Id.* This imprecise quantity term is insufficient under *Airboss*. "A contract may leave the final or total quantity ambiguous or unspecified in a requirements contract, *but it may not state an imprecise quantity term*." *Id.* at 193 (emphasis added). In

light of the imprecise quantity term, the parties' agreement does not qualify as an enforceable requirements contract.

Despite the clear import of *Airboss*, Plaintiffs argue that the court should follow *Cadillac Rubber & Plastics, Inc. v. Tubular Metal Sys. LLC,* 331 Mich. App. 416 (2020), in which the court found the quantity term "no less than one piece or unit of each of the Supplies and no more than one hundred percent (100%) of Buyer's requirements" sufficient to create a requirements contract. *Id.* at 420; *see also* ECF No. 6-3. This imprecise quantity term, essentially committing to "whatever we order," does not satisfy the statute of frauds under the reasoning of *Airboss. See id.* at 433-34 (concurring in part and dissenting in part).[1] *See also Acemco, Inc. v. Olympic Steel Lafayette, Inc.*, 2005 WL 2810716, at *4 (Mich. App. Oct. 27, 2005) ("'Any' quantity is in fact no quantity at all."); *Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 47 F.3d 1167 (6th Cir. 1995) (table) (agreement to furnish "requirements for the goods or services covered by this Purchase Order *to the extent of and in accordance with* . . . Buyer's

---

[1]Although the *Airboss* court did not expressly overrule *Cadillac Rubber*, leaving the issue "for another day," it declined to do so because the type of quantity term in Cadillac Rubber was not at issue in *Airboss* (where the contract contained no quantity term at all), and therefore a ruling on a *Cadillac Rubber*-like quantity term was not necessary to its decision. *Airboss*, 511 Mich. at 194 & n.4.

written instructions" did create requirements contract). The court concludes that *Cadillac Rubber* irreconcilably conflicts with *Airboss* on this point, and it is obligated to follow *Airboss. See Servo Kinetics, Inc. v. Tokyo Precision Instruments Co*., 475 F.3d 783, 798 (6th Cir. 2007) (in a diversity case, the court applies "Michigan law as determined by the Michigan Supreme Court. "If the Michigan Supreme Court has not spoken to a particular issue, we must predict how the Michigan Supreme Court would rule if confronted with that issue.").

Because the parties' agreement is not a requirements contract, ER Wagner is free to allow its obligations to expire by not accepting further releases. *See Airboss,* 511 Mich. at 198-99. In other words, ER Wagner is not required to continue to supply parts at the original contract price and it is not in breach of the parties' agreement. Therefore, Mitchell Plastics is not likely to succeed on the merits of its contract claim, which is fatal to a request for injunctive relief. *See Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 632 (6th Cir. 2000) ("Because we conclude that Plaintiff has no likelihood of success on the merits, we need not consider whether he would otherwise be entitled to a preliminary injunction.").

<u>ORDER</u>

IT IS HEREBY ORDERED that Plaintiffs' motion for preliminary injunction (ECF No. 6) is DENIED.

Dated: January 25, 2024

<u>s/George Caram Steeh</u>
George Caram Steeh
United States District Judge

11